## TERRENCE BRADY AND OTHERS *vs.* OLIVER W. BARNES.

Where facts have been found and reported to the court by an auditor or a committee, the court can not infer additional facts from the facts so found.

If it be necessary to the proper disposition of the case that further facts be found, it can be done only upon further evidence.

A written contract was entered into between *A* and the defendant, by which *A* agreed to do certain grading and mason work in the construction of a railroad.   This contract *A* assigned to *B* and *C*, and afterwards all three joined in the performance of the work and in bringing a suit for payment.   An auditor found the fact of the contract and of its assignment, and that the work was done by *A, B* and *C* jointly, and that they were jointly interested in the amount to be recovered.   The court accepted the report and made a further finding from the facts found that the written contract with *A* had been abandoned before any work was done under it and a new parol contract with

*A, B* and *C*, upon the same terms, had been substituted for it. Held that the court had no power to infer this fact from the facts found.

Under this rule the Supreme Court will not make an inference of other facts from facts found in the court below.

While a court can in some cases properly infer fraud from certain facts found, yet it is constructive or legal as distinguished from actual fraud, and the inference is one of law and not of fact.

ASSUMPSIT for work done and money expended; brought to the Superior Court in Middlesex County. The following facts were found by an auditor to whom the case was referred.

In January, 1870, Michael Brady, one of the plaintiffs, entered into a contract under seal with the defendants for the grading of a section of the Connecticut Western railroad and for masonry and other work to be done thereon. Soon after the contract was made, Michael Brady made an arrangement with the other plaintiffs, Terrence Brady and Peter Brady, who are his brothers, by which they were associated with him in the performance of the work required by the contract, and were equally interested with him therein, and in the income and profits of it, and in the horses, carts, tools. and implements used by them in the work; and on the 11th of February, 1870, Michael Brady, then deeply indebted to other parties, in order to prevent his creditors from causing embarrassment in the prosecution of the work, executed, with the consent of the defendant, an endorsement upon the contract as follows:

" For value received, I hereby assign and transfer my right, title and interest in the within contract, to Terrence Brady and Peter Brady. February 11th, 1870. MICHAEL BRADY."

Michael had no fraudulent intent in making the transfer of the contract to his brothers, and there was no fraud in fact or in law, unless fraud is to be inferred from the facts found, and he afterwards discharged all his obligations to his creditors.

After this endorsement was made, the work, which had not then been commenced, was in fact done by Michael, Peter and Terrence jointly. The defendant knew that the plaintiffs were so interested at the time the endorsement was made and made no objection to the arrangement. Michael Brady

told the defendant his reason for making the arrangement, and that he should continue to be interested in the work, and he did devote a considerable part of his time to it, which the defendant knew.   Terrence was occupied elsewhere most of the time and gave but little attention to the work.   All estimates for the work and for payments therefor were, with the knowledge and consent of the plaintiffs and defendant, made according to the terms of the contract, and they acted as required by it until the work was completed.   The defendant made payments from time to time on account of the work, amounting in all to the sum of $27,570.62, for most of which he took receipts signed, " Terrence and Peter Brady," or " T. & P. Brady."   Some of the receipts so signed were signed by Michael Brady in the following manner, " T. & P. Brady, by Michael Brady," and the money so receipted for was paid to him, without any order from the other plaintiffs or either of them.   All transactions relating to the work were had in the name of Terrence and Peter Brady, without the name of Michael Brady.

The auditor found the balance due from the defendant for the work to be $3,438.58, and that all the plaintiffs had a like or equal interest in the money so due and in the result of the suit; and found for the plaintiffs to recover that amount with interest, if upon these facts the law was so that they were entitled to recover at all in the suit.

The report of the auditor was accepted by the Superior Court, (*Park, C. J.,*) which thereupon made the following additional finding:

" On the trial of this cause the court finds the following fact, from the report of the auditor, in addition to the facts specifically stated in the report.   Not long after the contract under seal was made and executed between Michael Brady and the defendant in this action, and before any work was performed under it, the parties to the contract abandoned the same, and another contract by parol was made between the plaintiffs in this action and the defendant, upon the same terms and conditions specified in the original contract under seal which had been abandoned as aforesaid; and all the

indebtedness stated in the report of the auditor accrued under this parol agreement between all the plaintiffs in this action and the defendant."

The defendant's counsel objected to the finding of the above fact by the court without additional evidence, but the court proceeded to find, and did find said fact, in addition to the facts contained in the auditor's report, from the evidence stated in the report.

The counsel for the defendant also claimed, and asked the court to hold, that if, upon the facts found, the plaintiffs were entitled to recover in any form of action, yet they could not recover in general assumpsit, as the only cause of action, if any existed, was for the breach of a special contract in writing and under seal; but the court refused so to hold.

The defendant's counsel also claimed, and asked the court to hold, that no judgment could be rendered in favor of all the plaintiffs, but that the cause of action, if any existed upon the facts found, was either the sole property of Michael Brady, or the joint property of Terrence and Peter Brady; but the court refused so to hold.

The court rendered judgment in favor of all the plaintiffs, to recover from the defendant the amount stated in the report of the auditor with interest and costs. And the defendant moved for a new trial for error in the rulings of the court.

*W. C. Case* and *M. A. Fowler*, (of Poughkeepsie, N. Y.,) in support of the motion.

1.  The court below had no right or power to find the fact of an abandonment of the original contract, and the making of a parol contract between the plaintiffs and the defendant, in addition to the facts stated in the report. The auditor's report was accepted; no additional testimony was received. The question, and the sole question, for the Superior Court, upon the acceptance of the report was, what judgment should be rendered upon the facts reported by the auditor. The statute expressly provides that upon the acceptance of an auditor's report, judgment shall be rendered in accordance with the law and the facts found by the auditor. Gen. Stat.,

Rev. 1875, p. 428, sec. 3. It is not competent for a court to pass upon evidence which has once done its office before the auditor; nor to draw inferences of fact from the report; nor to find facts from evidence reported. *West* v. *Howard,* 20 Conn., 581; *Knapp* v. *White,* 23 id., 529, 541, 542; *Goodman* v. *Jones,* 26 id., 267. The facts, in the absence of additional testimony, must be found by the auditor, not gathered by the court by implication and conjecture. *Johnson* v. *Sanford,* 13 Conn., 467. It is the province of the auditor to decide all questions of fact, and it is not competent for the court to revise his decision upon the reported facts. *Bradley* v. *Bassett,* 13 Conn., 563. Now the auditor did not find an abandonment of the original contract, and the subsequent making of a parol contract in this case. The court below " found the fact from the report of the auditor in addition to the facts stated in the report." Without this finding by the court—a finding not only in addition to, but also in contradiction of the auditor's report—judgment could not be for the plaintiffs.

2. Assumpsit will not lie where the subject matter in controversy arises upon a contract under seal. *North* v. *Nichols,* 37 Conn., 375.

3. Judgment should have been rendered for the defendant, because Michael, Terrence and Peter Brady are improperly joined as plaintiffs. The transfer was either valid and operative, in which case Terrence and Peter Brady acquired the entire legal interest, and should be sole plaintiffs; or it was invalid and inoperative, in which case the entire legal interest remained in Michael Brady, and he alone should sue. The auditor finds that Michael told the defendant his reasons for making the arrangement, and that he should continue to be interested in the work, but there is no reason for supposing that the defendant understood that he was to remain interested as a contractor; on the contrary, the finding clearly shows that it was the purpose and intention of Michael in making this arrangement, to cease to be a contracting party. His reasons for making the transfer required a complete divestment of his legal interest in the contract.

*Warner* and *S. A. Robinson*, contra.

1. A new trial will not be granted if the court finds substantial justice has been done. The case finds that the plaintiffs did the work jointly for the defendant to his satisfaction and to the satisfaction of the chief engineer in charge of the work. And it is found that the balance due for the work is $3,438.58; and that all the plaintiffs have a like and equal interest in the money so due from the defendant and in the result of the suit. This finding is conclusive as to the parties and the amount due them, and shows that the plaintiffs are clearly entitled in equity to the amount which they seek to recover.

2. The claim that the work was done under a special contract under seal, cannot be sustained by the finding. On the facts found the law will imply either a waiver or abandonment. Though the work was done under the name of Terrence and Peter Brady, yet the three plaintiffs were the real parties. It was a partnership composed of the plaintiffs under that name. There was properly no assignment of the contract; there was only a substitution of the plaintiffs under the name of Terrence and Peter Brady. This substitution was by parol, and by that parol alteration the whole contract became parol. *Vicary* v. *Moore*, 2 Watts, 451; *Munroe* v. *Perkins*, 9 Pick., 298.

3. The finding of an abandonment from the finding of the auditor was a legal inference. A court has a right to find other facts from facts found. *Connelly* v. *Devoe*, 37 Conn., 571.

PARDEE, J. When a case has been referred by the court in which it is pending to an auditor, he becomes a statutory tribunal clothed with the power and charged with the duty of hearing all admissible evidence bearing upon the issue raised by the pleadings, of weighing it, and of finding distinctly and explicitly all the facts proven by it, and reporting the same to the court appointing him. By the act of reference the court parts with the power thus conferred upon the auditor; it reserves no right to add any fact to those found

by him, except upon evidence heard by it as to matters the determination of which is necessary to a proper disposition of the case and concerning which he has made no finding. He is to hear and weigh in the place of and for the court; the testimony admitted must exhaust its force upon his mind and produce conviction there, if anywhere; the court cannot reverse or review his action in weighing admissible testimony and in deducing facts therefrom; it cannot from any statement of the evidence heard and reported by him inferentially find a fact which he upon that evidence has refused to find. And, upon the same rule, whenever an issue of fact is closed to and tried by the Superior Court, this court will not, upon evidence reported, assume the responsibility of finding by inference therefrom a fact which that court could not find. The principles and the reasons which protect the sovereignty of juries over facts when issues are closed to them, underlie this right of auditors and committees in chancery; for they are but statutory juries finding facts by forms of proceeding peculiar to themselves. And it is the office and the duty of the court to declare the law applicable to the reported facts and render final judgment in accordance therewith.

The limitations upon the respective powers and duties of auditors and of the court appointing them have been repeatedly and definitely stated by this court; and the necessity for maintaining them is obvious. Without them this part of our judicial system would fall into hopeless confusion; one arm of the court would become useless.

In *Goodman* v. *Jones*, 26 Conn., 267, this court said as follows: "There is certainly some color in this case for the claim of the defendant below, that the auditor has not found the facts upon which his liability depends, but only the evidence of them, and that therefore, as it was not competent for the Superior Court to draw inferences from that evidence, judgment was properly rendered in his favor. It is a rule not in all cases easily applied but from which that court will not depart, that it will not draw inferences of fact from the evidence detailed in the reports of auditors or committees in chancery, but will render its judgment only on the main

facts found in them and on which the rights of the parties depend. In this respect it is governed by the rule which prevails in this court in regard to the finding and reservation by that court of facts for our advice, in which case we determine only on the facts presented and not on the evidence of them. In other words, it is not our province to find facts. We take occasion thus to allude to this subject because we have had reason in several instances to complain of the mode in which cases were presented in the reports of auditors and committees, especially the latter, when it would seem to have been supposed that, in the cases referred to them, the court to which the report was to be presented was like a jury, a tribunal to find facts as well as to pronounce the law upon them."

In *Knapp* v. *White*, 23 Conn., 541, the court said: "If we are correct in what has been said, it follows that the committee in finding the facts in the case did not act upon any illegal or improper evidence. Indeed we are inclined to think that the error of the Superior Court in setting aside the report consisted in reviewing the finding of the committee upon the evidence itself, rather than in confining itself to the simple question of the admissibility of the evidence to prove the facts for which it was offered. It is always the province of the court to supply any defect in the report of a committee in not finding all the facts which are in issue and which may be important to a decision of the case; but we do not understand that it belongs to the court to pass upon evidence which has once done its proper office before a committee in enabling a committee to find facts upon it, any more than to review the finding of a jury upon evidence submitted to it for that purpose."

In *West* v. *Howard*, 20 Conn., 588, the court said: "But it is not the province of the court to find the facts in this case from the evidence presented to us by the committee. It is the duty of the committee to find and report the facts which are proved before them; and it is only on the facts so reported that a decree can be based, unless indeed additional facts are found by the court, which is not the case here."

In *Graves* v. *Lockwood*, 30 Conn., 279, the court said: " This, though a very simple question of fact, was one which the auditor did not feel willing to decide, and therefore he attempts to set out the facts in his report for the court to say whether, in point of law upon those facts, there was such a joint employment as was claimed by the plaintiff.   *   *   * We think however that these facts and circumstances are only evidence from which the auditor or a jury might have inferred and therefore found such an employment as was claimed by the plaintiff, but that they do not absolutely and conclusively prove the employment, so as to justify a court in determining as matter of law that the employment was established by them.   We think moreover that it is much the most proper course for auditors and committees and courts, when trying facts, to settle questions of this sort, rather than by attempting to change them into questions of law to shift the responsibility of determining them from themselves upon the courts of law."

In *Dudley* v. *Deming*, 34 Conn., 176, the court said :   " It is sometimes the practice for auditors to report the facts, or the evidence which they find to be indisputably true, and to refer to the court some question of law, finding the issue contingently upon the determination of the question of law. It would be strange indeed if auditors could be permitted to report the evidence in actions of law and leave the principal facts to be determined by the court."

And in *Bloodgood* v. *Beecher*, 35 Conn., 482, a case reserved by the Superior Court upon the report of a committee for the advice of this court, it is said :   " Now this court has repeatedly held that it cannot find facts from evidence reported to it, and for this reason a majority of the court are unable to discover how this conveyance can be regarded as fraudulent and void under the statute of 1853."

It is true that this court in *Corbin* v. *The American Mills*, 27 Conn., 278, said :   " Before we proceed to consider the case we would remark that the form in which the question is presented is objectionable.   The Superior Court, instead of finding the evidence of the fact of agency, should have

found the fact itself, and not have left this court to decide upon the weight of evidence and to draw conclusions of fact. We allude to it here because this practice is becoming quite too common, and if persisted in we shall be compelled to refuse to try cases so irregularly brought before us. Had the judge undertaken to find whether the plaintiff and his servants were the hired servants and agents of the defendants, as alleged in the declaration, we think it quite possible that the case would not have come here. But we pass the objection for this time, since the parties have been permitted to argue their case upon its merits, and we will proceed to make a final disposition of the matter in litigation."

And that the court said also in *Dimock* v. *Suffield*, 30 Conn., 132: "We have therefore to consider all the facts and circumstances stated, and all such legitimate inferences of fact as ought fairly to be drawn from them. Ordinarily we do not attempt to find facts, and perhaps the most proper course in this case would be to dismiss it by simply saying that as the negligence imputed to the town has not been found by the Superior Court the plaintiff of course cannot recover. But as we are clearly of opinion that no such negligence on the part of the town ought to have been found under the circumstances, and as the facts themselves are connected with legal principles very liable to be misapplied in this class of cases, especially by jurors, (the case presenting a mixed question of law and fact in which it is sometimes claimed to be the duty of the court to instruct the jury how they ought to find their verdict,) and as the parties themselves are desirous that we should determine it without reference to any technical difficulty of this sort, we have concluded to give our opinion upon the case, as if it was before us to decide in the same manner that it was before the Superior Court."

In both of these cases the court, dealing with what are sometimes termed mixed questions of law and fact, does so for special reasons therein given, meanwhile recognizing the true rule and protesting against any intended infraction of it.

And we do not forget that in *Callender* v. *Colegrove*, 17

Conn., 27, the court said: "It is said however by the plaintiff in error that the committee have not found fraud or *mala fides*, and that this court cannot find it. But the committee reported to the Superior Court certain facts and left that court to draw inferences as to other facts therefrom; and that court have adjudged thereon that this contract was fraudulent and void; and we doubt very much whether this court can, on a writ of error, review that evidence. * * * It is said that the court cannot find facts, and that the committee have not found fraud. But the committee have found the facts and submitted them to the Superior Court, who have adjudged, as they might, that they were sufficient evidence of fraud." And in *Pettibone* v. *Stevens*, 15 Conn., 26: "It is objected that the committee do not find that it was done fraudulently. But they find the facts, and submit to the court for their opinion what is the legal inference from them; and the rule of law is that, when the facts are ascertained, fraud is a question of law from those facts: it is the judgment of law on facts and intents." And in *Story* v. *Norwich & Worcester Railroad Company*, 24 Conn., 113, that the court say: "We have as little hesitation in deciding as matter of law, that what amounts to fraud is a legal conclusion to be derived or inferred by courts from established facts. Fraud indeed as known to equity jurisprudence properly includes all acts, omissions and concealments by which an undue and unconscientious advantage is taken of another."

These cases are sometimes cited as precedents which justify the Superior Court in all actions at law and upon all bills in equity in finding facts additional to and inferentially from facts found in reports of auditors and committees, and in founding judgments and decrees thereon; and, it is not to be denied that this court, in confirming the action of that court in the exercise of its powers as a court of equity in cases of rights recognized and protected by our system of jurisprudence, when a plain, adequate and complete remedy cannot be had in the courts of common law, has sometimes omitted to make a full statement of the distinction existing between intentional and constructive fraud, and has used

general expressions which, taken apart from the particular
case to which they were applied and construed in their
broadest sense, conflict in some measure with the rule which
we have stated; and so far as they do they are not to be
regarded as authorities for attributing to the court power to
find resultant facts from reported evidence upon inference.

In the case before us, the auditor distinctly finds that
Michael Brady parted with his interest in the contract and
stripped himself of all right to be a party plaintiff in this
suit; and he nowhere finds directly or indirectly that the
defendant subsequently made a parol contract with the three
plaintiffs upon terms and conditions identical with those
contained in the written contract which was assigned to two
of them.  This lay at the foundation of their right to main-
tain this action, and upon it the judgment of the court was
made to rest.

It may well be that upon certain proven facts a question
of law would arise as to whether or not one party is bound
thereby to pay money to another, but whether a parol con-
tract which concerns among other things the construction of
the masonry necessary to a completed section of the bed of
a railroad, involving exact measurements, specific plans, and
particular arrangements as to time of payment; in short,
numerous details set out in a manner which is nearly equiva-
lent to a certainty to a certain intent in every particular, was
or was not made by this defendant with the three plaintiffs,
must be and remain a question of fact, pure and simple; and
this fact it was the duty of the auditor to find, if proof of its
existence was furnished; for it is susceptible of direct proof;
it rests upon words plainly spoken and accurately understood
by all parties; it is not hidden, as is fraud oftentimes, in
secret thoughts and intents.  The auditor has given minute
details as to the manner in which the work was performed;
as to the time when and persons to whom payments therefor
were made; and as to the form of the receipts given for
such payments; all of which are quite unnecessary if there
is a contract which covers all these points; but he has care-
fully refrained from saying that the defendant renewed with

all of the plaintiffs a contract like the one which had been assigned to two of them by the third with his consent. It is true, he has found as a fact that the defendant is indebted in a certain sum to the three plaintiffs, jointly and equally; but a parol contract, the counterpart of the abandoned one, is not at all necessary to the existence of such an indebtedness. It is quite obvious that the evidence which had spent its force upon, and had failed to convince, the auditor who heard and weighed it, was afterwards allowed to operate upon and convince the court, which had parted with the right to consider it.

A new trial should be granted.

In this opinion the other judges concurred; except PARK, C. J., who, having tried the case in the court below, did not sit.