## RUSSELL H. POST *vs.* DAVID WILLIAMS AND WIFE.

The statute (Revision of 1866, p. 543,) prescribes a special oath for committees appointed upon a petition in equity for the establishment of lost boundaries. Whether, where a committee took only the general oath for committees in chancery, it was sufficient : *Quære.*

Where, at the commencement of a hearing before such a committee, the counsel on both sides were ignorant that such a special oath had been prescribed, and the counsel for the respondents presented the general oath for committees in chancery and enquired of the opposing counsel whether that was not the proper oath, to which the latter replied that it was, and it was at once administered by a magistrate present, it was held that, after the hearing and a report by the committee, the respondents were estopped from claiming that the proper oath had not been administered.

The statute requires that the committee " report the facts and their doings " to the court. Held, that this did not require them to report all the facts upon which they founded their conclusions as to the true boundary, but that it was sufficient to report their conclusions of fact as to the boundary.

Post *v.* Williams.

PETITION to the superior court for the establishment of lost boundaries between the land of the petitioner and that of Deborah Williams, one of the respondents. The committee appointed by the court to hear the case and establish the bounds made the following report :—

" That the said Russell H. Post owns the tract of land described in said petition as therein alleged, and that the said Deborah Williams owns the tract of land described in said petition as therein alleged ; and that the bounds of said lands and the boundary line between them have become obscure and lost, and that the petitioner and respondents can not agree to establish said bounds and boundary line. Your committee therefore have erected and established said lost and uncertain bounds and boundary line between said premises, as follows, to wit: that the board fence built by the petitioner, as it now stands, leading from the land of Judah Simmons to the meadow between said parties, is the true boundary line between said premises on the upland, and that the stone wall on the meadow going down to high water mark, being a continuation of said board fence, is the true boundary line between said premises on the meadow land."

Against the acceptance of this report the respondents remonstrated, on the ground,—1st. That the committee were not legally sworn ; 2d. That they had not reported all the facts of the case as required by the statute* and as requested by the respondents ; and 3d. That upon the facts as proved and as set forth in the remonstrance, the committee should have established a certain line claimed by the respondents and not the one reported by them. The petitioner denied the truth of the allegations of the remonstrance, and the case was heard upon this issue, before *Dutton, J.*

On the trial it appeared that the committee met as stated in their report, and that it was suggested by the counsel for the respondents that they ought to be sworn. There being no copy of the statute of 1859, on which the proceeding was

---

* Act of 1859. Revision of 1866, p. 543. See this act set out in full, 31 Conn., 434.

Post *v.* Williams.

instituted, present, the counsel for the respondents inquired what oath should be administered. The counsel for the petitioner replied that any oath would answer. The counsel for the respondents, having before him the oath prescribed in the Compilation of 1854 for committees in chancery, inquired whether that was the proper oath. The counsel for the petitioner replied that it was, or that it would do, or words to that effect, whereupon a magistrate who was present administered the oath to the committee. No other oath was administered to them. No one of the counsel or of the committee were aware that any particular oath was prescribed by law, but all supposed at the time that the proper oath was administered and all parties acted in good faith. The counsel for the respondents insisted to the court that on these facts the court should decide that the committee were not legally sworn, and that the report ought not to be accepted. But the court did not so decide.

The counsel for the respondents further insisted that the committee had not reported all the facts in the case which it was their duty to report, and that this appeared from the report itself, and prayed the court so to decide. But the court did not so decide.

The respondents then offered in evidence a survey and distribution, and other proof to show where the true line was, with evidence that they requested the committee to report the facts thus shown for the consideration of the court. The court found that the committee took all these facts and other evidence into consideration, and found that the fence was on the line of the old map and survey, and established that as the division line ; and that they did not report these particular facts because they regarded them merely as evidence to be weighed by them in coming to a conclusion as to the division line.

The court overruled the remonstrance, accepted the report, and passed a decree establishing the boundary reported by the committee. The respondents moved for a new trial.

*Ingham* and *Culver*, in support of the motion.

1. The act on which the petition is founded points out the mode of proceeding under it, and prescribes an oath in a set form of words, which it says shall be taken by the committee before entering upon the duties of their appointment. It is an enabling statute, in derogation of the common law. A strict compliance therefore with all its provisions and requirements is indispensably necessary to the validity of every proceeding under it. The oath that was taken was for the purpose of the case no oath at all. The committee therefore acquired no power to act. Unless they take the oath required the statute withholds from them any jurisdiction. The oath is a condition precedent. The statute is peremptory. A waiver of the objection by the parties could not alter the case. *Metcalf* v. *Gillett*, 5 Conn., 400 ; *Case* v. *Humphrey*, 6 id., 130 ; *Husted* v. *Greenwich*, 11 id., 383 ; *Huntington* v. *Birch*, 12 id., 142 ; *Augur* v. *Augur*, 14 id., 82 ; *Denison* v. *Denison*, 16 id., 38 ; *Fisher* v. *Shattuck*, 17 Pick., 252 ; 1 Swift Dig., 11.

2. Not only is this a case in which there could be no estoppel, but there was in fact no waiver. In order to constitute an estoppel in pais there must be an intention to waive or to mislead or culpable negligence. The facts found show that neither can be imputed to the defendants. Both parties intended that the committee should be legally sworn. It is not in the mouth of the petitioner to impute negligence to the respondents when he himself was in the same condition ? No inference can be drawn that either party intended to waive his right. It is no answer to say that the parties are presumed to know the law, for it is found as a fact that through inadvertence that was not done which they *actually intended* should be done. It was the business of the petitioner who went forward to see that his committee was legally qualified. He acted upon his own responsibility, and the law and the facts were equally within the knowledge of both parties. The mistakes or good faith of the parties do not conduce to prove a waiver or to qualify the committee. *Taylor* v. *Ely*, 25 Conn., 258, 260 ; *Calhoun* v. *Richardson*, 30 id., 228 ; *Hoxie* v. *Home Ins. Co.*, 32 id., 40.

Post *v.* Williams.

3. It was the duty of the committee to report the facts specially. They have reported nothing but their general conclusions, and they are not facts. The statute, and the oath which they take, which is part of the statute, require them to report the facts and their doings, not their conclusions, nor such facts only as they may deem material, but all the facts that shall be presented to them by either party. This is indispensably necessary for the information of the court, whose duty it is to decide the case upon the facts reported and pass a decree. Revision of 1866, tit. 18, sec. 7 ; Acts of 1864, p. 67 ; Acts of 1859, p. 48 ; 2 Swift Dig., 251, 254 ; *Abbe* v. *Goodwin,* 7 Conn., 377.

*Chadwick* and *Vinal,* contra.

1. It is too late for the respondents to claim that the proper form of oath was not administered, after allowing the case to go to trial and taking the chances of a report in their favor. *Warren* v. *Glynn,* 37 N. Hamp., 340 ; *Townsend* v. *Stoddard,* 10 Foster, 23 ; *Glidden* v. *Towle,* 11 id., 166. They have waived their right to object by consenting that the ordinary oath for committees in chancery should be administered to the committee. *Sherwood* v. *Stevenson,* 25 Conn., 443 ; *Smith* v. *The State,* 19 id., 498 ; *Crone* v. *Daniels,* 20 id., 332 ; *Payne* v. *Farmers & Citizens Bank,* 29 id., 416 ; *State* v. *Hyde,* id., 568 ; *Bailey* v. *Town of Trumbull,* 31 id., 581 ; *Kellogg* v. *Brown,* 32 id., 108 ; *Candler* v. *Hammond,* 23 Geo., 493. The respondents are estopped from claiming that the report should not be accepted on the ground that they were unaware of the law requiring a certain form of oath, because the act of 1859, being the statute on which the petition was brought, contains the form of oath required, and the attorney for the respondents will be " presumed to know the law," and especially will be presumed not to be ignorant of the provisions of the act on which the whole proceeding is based. " *Ignorantia legis non excusat ;* " but if so he was " *grossly negligent* " in not knowing it, and is therefore estopped. *Preston* v. *Mann,* 25 Conn., 128 ; *Danforth* v. *Adams,* 29 id., 111 ;

*Calhoun* v. *Richardson*, 30 id., 228 ; *Andrews* v. *Elliott*, 32 Eng. Law & Eq., 311.

2. The report stands on the same ground as the report of any committee in equity. *Knapp* v. *White*, 23 Conn., 529 ; *Perry* v. *Pratt*, 31 id., 441. The report of a committee must find and present the facts and not the evidence. *West* v. *Howard*, 20 Conn., 588 ; *Goodman* v. *Jones*, 26 id., 264. It is well settled that the court will not entertain the inquiry whether a committee in chancery has mistaken the weight of the evidence before them. Their report stands on the same ground as a finding of facts by the court itself, or by a report of auditors. *Goodrich* v. *Stanley*, 24 Conn., 619 ; *Ashmead* v. *Colby*, 26 id., 312.

McCURDY, J. The respondents ask that the report of the committee be rejected on two grounds. 1st. That the oath taken by them was the ordinary one for committees in chancery and not the particular one prescribed by statute for this case. The proceeding is a suit in chancery, and the common oath is in substance that the committee will find the facts and report them to the court. The special oath by the act of 1859 requires the committee to find the facts and " ascertain and establish the bounds," and report the same to the court. The meaning is that they shall find and fix the true places of the bounds and make report of these among the facts for the final decision of the court. The whole duty seems to be embraced in the general oath, and there is no pretence that the finding of the committee was affected in the least by their having taken one oath instead of the other. The objection therefore is not one to be favored, and we think it is fully obviated by the facts in the case.

At the meeting of the committee the counsel for the respondents inquired what oath should be administered. The counsel for the petitioner replied that any oath would answer. The counsel for the respondents, having before him *the oath prescribed for committees in chancery*, asked whether that was the proper one. The counsel for the petitioner said it was, or would do, or words to that effect, and so it was adminis-

tered. Thereupon a long and expensive trial ensued result-
ing favorably to the petitioner; and then for the first time the
respondents' counsel started an objection that the oath which he
assented to as the proper one, which indeed he may be said to
have presented himself, was illegal and the whole proceedings
were void. The petitioner claims that the cavil is too late,
that the respondents have waived the exception and are estop-
ped from setting it up. The respondents urge that the diffi-
culty arises out of the express provisions of the statute and is
insuperable.

There are certainly numerous decisions in our reports that
the positive requirements of statutes in certain cases must be
exactly complied with. But there are quite as many, espe-
cially of late years, to the effect that although an error may
be of a fatal nature, yet the right to take advantage of it may
be lost by laches or waiver creating an estoppel. In many of
the cases where the rule of strictness prevailed it was given as
a prominent reason that the purpose of the process was to
take away the property of the party by a proceeding *in invi-
tum.* In other cases the question of waiver or estoppel was
not raised by the counsel, and in some the dictum of the
judge was not required in the case. So far as there is a con-
flict, those decisions are most consistent with sense and justice
and analogy which prevent a party from going to trial on the
merits and accepting the result if favorable, but if otherwise
taking advantage of a technical difficulty which he knew of
or should have known of from the beginning.

The respondents claim that the error in this case was the
consequence of an innocent mistake; that there was no inten-
tional waiver, and that the rules respecting waiver and estop-
pel do not apply. But it is a well known principle that cul-
pable negligence in not ascertaining a fact may be held
equivalent to a knowledge of it and a relinquishment of its
benefits. The mistake in this case was not one of fact but of
law, an ignorance of the provisions of a public statute, a
special one authorizing a peculiar proceeding and directing
the particular steps, a statute under which the parties were
acting and whose provisions they were bound to know. There

can hardly be an instance of grosser negligence than their failing to read it. The general rule is that where the court has jurisdiction of the parties and the cause, and there has been in the course of the proceedings an irregularity which might be fatal, as the omission to do some act required by law or the doing it improperly, the objection may be waived, or a party may be estopped from raising it. For cases bearing upon this subject we refer to *Smith* v. *State*, 19 Conn., 494 ; *Crone* v. *Daniels*, 20 id., 331 ; *Taylor* v. *Ely*, 25 id., 250 ; *Sherwood* v. *Stevens*, 25 id., 431 ; *Danforth* v. *Adams*, 29 id., 107 ; *Payne* v. *Farmers & Citizens Bank*, 29 id., 415 ; *State* v. *Hyde*, 29 id., 564 ; *Calhoun* v. *Richardson*, 30 id., 210 ; *Bailey* v. *Trumbull*, 31 id., 581 ; *Kellogg* v. *Brown*, 32 id., 108, and a learned note by the reporter, 111 ; *Goodwin* v. *Mason*, 5 N. Hamp., 458.

The second objection is that the committee did not report the facts. But this is clearly without foundation. The facts to be found and reported are only those put in issue by the pleadings, and these fully appear in the report. A recapitulation of the evidence as claimed by the respondents is neither necessary nor proper.

It is further said that the finding of the court shows that the boundaries of the lots were never lost or obscure, and that the true line is that which is contended for by the respondents. These were the questions of fact which were in issue between the parties and which were passed upon by the committee ; and even if it were permissible to go over their heads and inquire into the justice of their decision we see no reason to doubt its correctness.

We advise that the report be accepted and a decree passed in favor of the petitioner.

In this opinion the other judges concurred ; except DUTTON, J., who having tried the case in the court below did not sit.